UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

PAUL H., :
      Plaintiff, :
     :
      v. : C.A. No. 24-00045PAS
     :
CAROLYN W. COLVIN, :
Acting Commissioner of Social Security, :
      Defendant. :

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

      On February 9, 2022, Plaintiff Paul H., then thirty-three years old, with a generalized equivalency high school diploma and past work experience as a pizza cook and front desk clerk, file his fifth application[1] for Supplemental Security Income ("SSI") disability benefits. Tr. 26, 35, 292. Plaintiff undisputedly suffers from serious mental impairments, including personality disorder, attention deficit hyperactivity disorder ("ADHD"), depression, anxiety, an eating disorder and polysubstance abuse disorder. See Tr. 28. Plaintiff's substance use disorder is principally based on severe abuse of methamphetamine; the record also reflects use of alcohol, benzodiazepines and cocaine. Thus, important to this case is the provision of the Social Security Act that bars an award of benefits if "drug or alcohol addiction would . . . be a contributing factor material to the Commissioner's determination that the individual is disabled." 42 U.S.C.§§ 223(d)(2)(C), 1382a(3)(J). That is, if an individual who is impaired by drug addiction and/or alcoholism is found to be disabled, he may not be awarded benefits unless there is also a secondary finding that the claimant would continue to be disabled if he stopped using drugs or

---

[1] Plaintiff's 2013, 2015 and 2021 applications sought both Disability Insurance Benefits ("DIB") pursuant to Title II of the Social Security Act and Supplemental Security Income ("SSI") pursuant to Title XVI. Tr. 102, 306-07. There is a reference to an application initiated by Plaintiff in 2018. See Tr. 120, 221. Unlike the earlier applications, the current application seeks only SSI benefits.

alcohol; "we will determine whether [drug addiction and alcoholism] is 'material' to the finding that the claimant is disabled."  SSR 13-2p, Evaluating Cases Involving Drug Addiction and Alcoholism, 2013 WL 621536, at *2 (Feb. 20, 2013); see Meaghan D. v. Kijakazi, C.A. No. 22-00033-WES, 2022 WL 10338023, at *7 (D.R.I. Oct. 18, 2022), adopted by text order (D.R.I. Nov. 14, 2022), aff'd sub nom. Dube v. Kijakazi, No. 23-1068, 2024 WL 372841 (1st Cir. Jan. 16, 2024).

An administrative law judge ("ALJ") heard Plaintiff's testimony, examined the record evidence, particularly the objective clinical observations and mental status examination ("MSE")[2] findings, and carefully considered the expert opinions of the two non-examining psychologists (Drs. Marsha Hahn and Clifford Gordon), the treating psychiatrist (Dr. Farrel Klein) and the treating psychologist (Dr. Megan Pinkston-Camp).  The ALJ found Plaintiff to suffer from polysubstance disorder among other mental impairments and to be functionally limited by his mental impairments, able only to perform work involving simple instructions with occasional interaction with coworkers and supervisors, no interaction with the public and occasional changes in a routine work setting.  Tr. 28, 30.  Because this RFC[3] resulted in the finding that Plaintiff was not disabled, the ALJ did not perform the secondary analysis to determine whether disability would persist if Plaintiff ceased all use of methamphetamines, alcohol and other non-prescribed controlled substances.  See Tr. 36.

---

[2] The mental status examination or MSE is an objective clinical assessment of an individual's mental ability, based on a health professional's personal observation, where "experienced clinicians attend to detail and subtlety in behavior, such as the affect accompanying thought or ideas, the significance of gesture or mannerism, and the unspoken message of conversation." Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *5 n.7 (D.R.I. Mar. 7, 2022) (internal quotation marks omitted), adopted by text order (D.R.I. Mar. 31, 2022).

[3] RFC refers to "residual functional capacity," which is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 416.945(a)(1).

Plaintiff's motion to remand (ECF No. 12) the case for further proceedings challenges the ALJ's RFC finding.  Plaintiff contends that the ALJ erred in treating as mostly persuasive the findings of the non-examining expert psychologists (Drs. Hahn and Gordon) and in rejecting as unpersuasive the opinions of the treating psychiatrist, Dr. Klein, and the treating psychologist, Dr. Pinkston-Camp.  The Commissioner's counter motion (ECF No. 14) asks the Court to affirm the ALJ's decision because it is consistent with applicable law and well supported by substantial evidence.  The parties' motions are pending before me on consent pursuant to 28 U.S.C. § 636(c).

## I. Background

With a work history punctuated by occasional and generally short periods of employment, Plaintiff has long suffered from the effects of severe alcohol and methamphetamine/drug abuse, with a lifestyle of homelessness, couch surfing, exchanging sex for drugs and committing minor crimes.  See, e.g., Tr. 35, 675, 684-85.  It is well documented in the record that during periods of frequent, often daily substance use, methamphetamine caused significant paranoia, depression, psychosis and poor self-care.  See Tr. 83-90, 93-96.  Thus, Plaintiff's most recent prior set of disability applications (filed in 2021) were denied at the initial phase because, while Plaintiff was then found to be disabled with "marked limitations" in all spheres except for understanding, remembering and applying information (in which he was found to be only mildly impaired), the non-examining psychiatrist also found that "DA+A[4] IS MATERIAL," and that Plaintiff would have no more than moderate limitations in all functional areas without substance use.  Tr. 85-86, 95-96.  Based on the materiality of substance abuse to

---

[4] In this record, "DA+A" refers to "drug addiction and alcoholism" as pertinent to the statutory mandate that a disabled individual may not receive benefits when drug addiction and/or alcoholism is a contributing factor material to the finding of disability.  See 42 U.S.C. §§ 223(d)(2)(C); 1382a(3)(J).

3

the symptoms resulting in disability, Plaintiff was barred from receiving benefits pursuant to applicable law. Tr. 92, 102; see 42 U.S.C. §§ 223(d)(2)(C), 1382a(3)(J).

The period in issue for the pending application begins on February 9, 2022. Tr. 51-52 (amending onset date to February 9, 2022). As his attorney argued during the ALJ hearing, by that date, Plaintiff's use of methamphetamine, other drugs and alcohol had declined. Tr. 52 ("since the amended onset date, [claimant] had some very intermittent and very brief relapses to the substances"). Plaintiff himself testified that since onset: "My relapses are getting sporadic. They haven't been what they used to be like where I was using every day, all day." Tr. 66. Consistently, a note written by Plaintiff's treating psychiatrist, Dr. Klein, on March 18, 2022, records Plaintiff's statement that, "I drank last night, still sometimes use meth and have sex, but it is not like it used to be." Tr. 1029. Following appointments in March 2022, Dr. Klein noted a one-day methamphetamine relapse that increased paranoia, but also observed:

> He has anxiety over situations and a few serious panic attacks. . . . He has gotten back into substance abuse counseling. . . . Anxiety with occasional recent panic attacks is much better with avoiding substances but are still problematic. . . . He is not feeling hopeless or helpless. . . . He denies feeling suicidal. He reports eating binges . . . have stopped on current Topamax and Wellbutrin.

Tr. 632, 1029 (emphasis omitted). Significant are Dr. Klein's MSE observations at the March 2022 appointments: these are largely normal, except for an anxious and sometimes paranoid mood, with generally decreasing guilt/paranoid ideation in thought content, but good eye contact, normal and fluent speech and language, appropriate affect, intact memory, appropriate attention and adequate fund of knowledge. Tr. 634. Also in March 2022, Plaintiff saw a physician's assistant in Dr. Klein's practice group; this provider observed on objective examination "normal appearance," "alert and oriented to person, place, and time," and "mood normal." Tr. 635, 638.

4

Dr. Klein's treating notes continue with regular monthly appointments through March 2023. These reflect substantially similar occasional observations of improvement with medication and similar MSE findings; that is, normal except for impairment in mood (generally anxious) and thought content (guilt with paranoia and sometimes obsessions). E.g., Tr. 1054-55 (despite recent HIV diagnosis, "since he has not used drugs often, paranoia and voices cleared but he still feels like people are looking at him. . . . Sleep is usually pretty good when not using."); Tr. 1508 ("less anxious and paranoid on Klonopin with no evidence of abuse . . . **he wants to work** . . . . He is doing better with no known recent relapse") (emphasis in original). Nonpsychiatric providers' observations throughout the period are also relatively benign. E.g., Tr. 1083, 1085 (nurse practitioner's physical examination includes observations of alert mental status and normal appearance, mood, judgment and thought content); Tr. 1093, 1095 (nurse records psychiatric observations of normal mood); Tr. 1291, 1296 (physical examination of physician assistant addressing HIV treatment includes observations of alert and oriented with normal mood and affect); Tr. 1454 (primary care physician's physical examination includes observations of alert mental status and normal appearance, mood, judgment and thought content).

In June 2022, Plaintiff resumed substance abuse counseling with a psychologist, Dr. Pinkston-Camp. Tr. 1058-59. At the initial appointment, Dr. Pinkston-Camp focused on Plaintiff's ongoing use of methamphetamine but made detailed MSE observations that are largely normal, with only mood "not good." Tr. 1061. Specifically, she noted that Plaintiff was well groomed, cooperative, with good eye contact, normal fluent speech, unremarkable thoughts, appropriate impulse control/attention/concentration, and adequate fund of knowledge. Id. At subsequent appointments through February 2023, Dr. Pinkston-Camp's observations reflect

improvement in that Plaintiff's mood became mostly neutral or appropriately sad (as when his stepfather was dying, Tr. 1527); she classified his illness severity as "moderate" and his prognosis as "excellent." Tr. 1513-1601. Late in the period in issue, Dr. Pinkston-Camp noted a temporary relapse on October 20, 2022, in that Plaintiff's appearance became "unkempt," his mood "Ok, not really," and his thoughts paranoid. Tr. 1569-71. However, by the next appointment, on November 10, 2022, Plaintiff's mood was back to being "Ok" and thought content had improved to "[u]nremarkable." Tr. 1575-76. And by January 23, 2023, the observation of unkempt appearance disappeared. Tr. 1585-86. Further, during this period (October 2022 to January 2023), other providers (e.g., Dr. Klein) did not endorse Dr. Pinkston-Camp's observations of "unkempt[ness]." See infra.

  Plaintiff also received mental health treatment at Thrive Behavioral Health. During a psychiatric assessment with Dr. Mindy Rosenbloom in April 2022, the notes record clinical observations that he was "clean and neat, well groomed," with good eye contact, no bizarre behavior, no suicidality, reactive and appropriate affect, although his mood was anxious and he was fidgety with "some awareness of illness/symptoms" and "recent impulsive behavior." Tr. 1260-70. Plaintiff told Dr. Rosenbloom that he "[f]eels social anxiety," but "no longer ha[s] panic attacks or agoraphobia." Tr. 1260. Thrive Behavioral Health connected Plaintiff with a social worker who saw him regularly from March 2022 through March 2023. Over this extended period, this social worker consistently recorded observations that are largely benign. Tr. 1316-68; see, e.g., Tr. 1318-19 ("sounded clear headed and focused . . . friendly and cooperative"); Tr. 1322 ("affect was low key, lucid"); Tr. 1324 ("pleasant, alert, and fully engaged"); Tr. 1326-27 ("low key, articulate," doing "OK"); Tr. 1328 ("low key, self aware, invested, with no outward signs of anxiety"); Tr. 1331 ("friendly and relatively calm"); Tr. 1367 ("affect was low key,

6

friendly, and honest"). Except for one interaction when Plaintiff was "high" from use of crack cocaine, Tr. 1363, the only mildly adverse observation is one from early in the treating relationship, when the social worker noted Plaintiff's "flat affect" and his unwillingness to go to a crowded shelter, although this note also reflects that Plaintiff nevertheless agreed to (and did) follow up on the social worker's suggestion by contacting the shelter. Tr. 1320-23.

Much of this complex record was reviewed by the two non-examining expert psychologists – they saw records for the period prior to and during the period in issue, including treating notes of Drs. Klein and Pinkston-Camp through June 2022, the assessment of Dr. Rosenbloom and the mental health observations of several non-mental health providers. They both found that, despite ongoing intermittent relapses, chaotic interpersonal relationships and occasional homelessness, Plaintiff's impairments resulted in no more than moderate limitations. Tr. 104-07, 112-16; see Tr. 114 ("moderate limitations due to psychiatric issues at this time"). Because these limits are not disabling, both Drs. Hahn and Gordon found that a DA+A materiality analysis was not needed. See Tr. 109 ("no evidence of any substance abuse disorder/DA[+]A issue"); Tr. 114 ("DA[+A] is quite important in claimant's life, but is non contributory to this review").

After the non-examining review, Plaintiff's treatment continued with Dr. Klein, Dr. Pinkston-Camp and the Thrive Behavioral Health social worker. With the exception of the short period of "unkempt" appearance that Dr. Pinkston-Camp observed in late 2022 and early 2023, the objective observations during this period do not reflect any worsening or new symptoms. Further, Dr. Klein's MSEs from the period when Dr. Pinkston-Camp observed that Plaintiff was unkempt do not reflect any such adverse findings. See Tr. 1467, 1479, 1491 ("Well groomed"). Similarly, the social worker's observations for the same period are also benign. See Tr. 1351,

1353-54 ("at his baseline"; "relaxed and talkative"); Tr. 1356 ("lucid and friendly . . . doing fine"); Tr. 1358 ("in good spirits . . . things were going well at the home that he's staying at"); Tr. 1361 ("Low key, friendly.").

  Shortly before the ALJ hearing, Dr. Klein signed a work-preclusive RFC assessment in which he opined that Plaintiff is severely limited in his ability to respond to supervisors, coworkers and customary work pressures and that his mental health issues would result in interruptions every few hours and absences from work more than three times per month. Tr. 1510-12. Dr. Klein's opinion lists methamphetamine abuse as a disorder that he diagnosed as "in remission." Tr. 1510. With this foundational diagnosis, Dr. Klein's RFC analysis does not include an opinion regarding whether stopping all methamphetamine or other drug/alcohol use would improve Plaintiff's ability to function. Consistent with this opinion, Dr. Klein's treating notes for the period from October 2022 through the last appointment of record in March 2023 reflect Plaintiff's report that he had not used drugs at all. Tr. 1464-1509. The ALJ's analysis highlights Dr. Klein's finding of "no meth relapses," and appropriately contrasts it with Plaintiff's statements to other providers during the s ame period, particularly Plaintiff's February 2023 statement to the Thrive Behavioral Health social worker that he had started using crack cocaine and that an award of SSI benefits would not cause him to stop use of cocaine, confirmed by the social worker's February 15, 2023, observation that Plaintiff was using crack and was "high." Tr. 33 (referencing Tr. 1363-64). Also during this period, when Dr. Klein opined to "remission," Tr. 1510, Plaintiff told Dr. Pinkston-Camp that he had relapsed in January/February 2023 by using methamphetamine as well as that episodic use was ongoing. Tr. 1585; see Tr. 1591 (at session with Dr. Pinkston-Camp in February 2023, Plaintiff "endors[es] continued, yet episodic use of methamphetamine").

One week after the ALJ hearing, Dr. Pinkston-Camp signed an RFC assessment in which she opined to severe limits in the ability to relate to other people including supervisors, to respond to customary work pressures, to perform varied tasks, and to engage in activities of daily living; she further opined that mental health issues would result in multiple interruptions during an eight-hour workday and absences from work more than three times per month. Tr. 1602-1604. Despite opining to work-preclusive limits, Dr. Pinkston-Camp signed an opinion that lists methamphetamine use disorder as an active diagnosis, does not opine that it is in remission, but omits the legally critical DA+A analysis whether stopping all methamphetamine use would impact Plaintiff's ability to function. Tr. 1602, 1604. Dr. Pinkston-Camp also limited her opinion by relying on Dr. Klein for matters related to prescribed medication and medication side effects. Tr. 1602.

## II.     Standard of Review

As long as the correct legal standard is applied, "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §§ 405(g), 1383(c)(3); see Purdy v. Berryhill, 887 F.3d 7, 13 (1st Cir. 2018). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Substantial evidence "means – and means only – 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Id. (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). Though the difference is quite subtle, this standard is "somewhat less strict" than the "clearly erroneous" standard that appellate courts use to review district court fact-finding. Dickinson v. Zurko, 527 U.S. 150, 153, 162-63 (1999) (cited with approval in Biestek, 587 U.S. at 103). Thus, substantial evidence is more than a scintilla – it must do more than

merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. Irlanda Ortiz v. Sec'y of Health & Hum. Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam).

Once the Court concludes that the decision is supported by substantial evidence, the Commissioner must be affirmed, even if the Court would have reached a contrary result as finder of fact. Rodriguez Pagan v. Sec'y of Health & Hum. Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); Lizotte v. Sec'y of Health & Hum. Servs., 654 F.2d 127, 128 (1st Cir. 1981). The determination of substantiality is based upon an evaluation of the record as a whole. Frustaglia v. Sec'y of Health & Hum. Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Brown v. Apfel, 71 F. Supp. 2d 28, 30 (D.R.I. 1999); see Parker v. Bowen, 793 F.2d 1177, 1180 (11th Cir. 1986) (per curiam) (court must consider evidence detracting from evidence on which Commissioner relied). The Court's role in reviewing the Commissioner's decision is limited. Brown, 71 F. Supp. 2d at 30. The Court does not reinterpret or reweigh the evidence or otherwise substitute its own judgment for that of the Commissioner. Thomas P. v. Kijakazi, C.A. No. 21-00020-WES, 2022 WL 92651, at *8 (D.R.I. Jan. 10, 2022), adopted by text order (D.R.I. Mar. 31, 2022).

If the Court finds either that the Commissioner's decision is not supported by substantial evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim, the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42 U.S.C. § 405(g). Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3, 2015).

**III.    Disability Determination**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.605. The impairment must be severe, making the claimant unable to do previous work, or any other substantial gainful activity that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. §§ 416.905-11.

### A. Five-Step Evaluation Sequence

For claimants aged eighteen and over, the ALJ must follow five steps in evaluating a claim of disability. See 20 C.F.R. § 416.920(a)(1)-(2). First, if a claimant is working at a substantial gainful activity, the claimant is not disabled. Id. § 416.920(a)(4)(i). Second, if a claimant does not have any impairment or combination of impairments that significantly limit physical or mental ability to do basic work activities, then the claimant does not have a severe impairment and is not disabled. Id. § 416.920(a)(4)(ii). Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Appendix 1, the claimant is disabled. Id. § 416.920(a)(4)(iii). Fourth, if a claimant's impairments do not prevent doing past relevant work, the claimant is not disabled. Id. § 416.920(a)(4)(iv). Fifth, if a claimant's impairments (considering RFC, age, education and past work) prevent doing other work that exists in the local or national economy, a finding of disabled is warranted. Id. § 416.920(a)(4)(v). Significantly, the claimant bears the burden of proof at Steps One through Four, but the Commissioner bears the burden at Step Five. Sacilowski v. Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 143-44 (D. Mass. 2003) (five-step process applies to SSI and DIB claims).

### B. Opinion Evidence

An ALJ must consider the persuasiveness of all medical opinions in a claimant's case record. See 20 C.F.R. § 416.920c. A "medical opinion" is defined in the regulations as a statement that identifies specific functional "limitations or restrictions" "about what [claimants] can still do despite [their] impairment(s)." Id. § 416.913(a)(2). The most important factors to be considered when the Commissioner evaluates the persuasiveness of a medical opinion are supportability and consistency; these are usually the only factors the ALJ is required to articulate. Id. § 416.920c(b)(2); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug. 6, 2019). Supportability "includes an assessment of the supporting objective medical evidence and other medical evidence, and how consistent the medical opinion or . . . medical findings is with other evidence in the claim." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5859 (Jan. 18, 2017). Other factors that are weighed in light of all of the evidence in the record includes the medical source's relationship with the claimant and specialization, as well as "other factors" that tend to support or contradict the medical opinion or finding. See 20 C.F.R. § 416.920c(c). "A medical opinion without supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . . persuasive regardless of who made the medical opinion." Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. at 5854. Medical source findings/opinions may not constitute substantial evidence if rendered by a source who was not privy to evidence that would materially detract from the force of the findings. Ana D. v. O'Malley, C.A. No. 23-387WES, 2024 WL 3886655, at *3 (D.R.I. Aug. 20, 2024), adopted by text order (D.R.I. Sept. 4, 2024).

**IV.   Analysis**

In his decision, the ALJ found the non-examining psychologists' prior administrative findings to be persuasive, except to the extent that the ALJ made the unchallenged finding that Plaintiff is somewhat more limited in his ability to understand and remember and his ability to adapt. Tr. 33-34. The ALJ's decision found Dr. Klein's RFC opinion to be unpersuasive because it is inconsistent with and not supported by Dr. Klein's treating notes, including Dr. Klein's many largely normal MSE findings and notations of improvement with treatment. Tr. 34. The ALJ also noted the inconsistency between Dr. Klein's opinion and the treating notes of other providers, including the foundational problem with Dr. Klein's opinion that drug abuse was "in remission," Tr. 1510, in contrast to the ongoing drug use during the same period as reflected in the social worker's notes, as well as the clash between the Klein opinion and the many largely normal observations and MSE findings made by other providers. Tr. 34. The ALJ also considered the Klein opinion's inconsistency with the RFC findings of the non-examining psychologists who were able to review the other providers' records. Id. The ALJ found Dr. Pinkston-Camp's RFC opinion to be unpersuasive for similar reasons. In addition, the ALJ found the Pinkston-Camp opinion to be unpersuasive because Dr. Pinkston-Camp listed methamphetamine abuse as an active diagnosis yet failed to consider whether stopping methamphetamine use would improve Plaintiff's ability to function, as well as because Dr. Pinkston-Camp deferred on certain matters to Dr. Klein, whose opinion was not persuasive. Id.

Plaintiff argues that these findings are tainted by error.

Plaintiff's principal argument seems to be that the record continued to develop after the non-examining experts performed their work, which requires remand. ECF No. 12-1 at 13-17. This argument fails because Plaintiff fails to point to any record that the non-examining experts were not privy to that would detract from the weight that can be afforded their opinions. See

Andrea T. v. Saul, C.A. No. 19-505WES, 2020 WL 2115898, at *5-6 (D.R.I. May 4, 2020) (remand is required when "the state-agency physicians were not privy to parts of [plaintiff's] medical record [which] detracts from the weight that can be afforded their opinions") (alterations in original), adopted by text order (D.R.I. June 5, 2020).  Thus, the Court finds that the ALJ's approach is consistent with well-settled law establishing that an ALJ may rely on the non-examining expert findings as long as there is substantial evidence to support his commonsense finding that the post-review records reflect symptoms that are similar to or more benign than those interpreted by the experts.  See Nancy T. v. Kijakazi, C.A. No. 20-420WES, 2022 WL 682486, at *7 (D.R.I. Mar. 7, 2022), adopted by text order (D.R.I. Mar. 31, 2022).  To hold otherwise would render such opinions irrelevant because of the practical impossibility that such experts can be privy to updated medical records; thus, the approach Plaintiff proposes "would defy logic and be a formula for paralysis."  Sanford v. Astrue, No. CA 07-183 M, 2009 WL 866845, at *8 (D.R.I. Mar. 30, 2009) (citing Kendrick v. Shalala, 998 F.2d 455, 456-57 (7th Cir. 1993)).

As the Court's own review of the post-file review records has confirmed, the ALJ's commonsense analysis of the post-file-review portion of Plaintiff's record appropriately focuses on MSE findings and other objective observations that are similar to or more benign than the MSE findings and other objective observations that were interpreted by the non-examining experts.  That is, the post-file review record contains no reference to new symptoms or to symptom worsening that would require medical interpretation.  Further, the ALJ's examination of the post-file review MSE clinical findings does not constitute an improper lay interpretation of complex medical data.  See Michael D. v. Berryhill, C.A. No. 18-00426-WES, 2019 WL 2537587, at *7 (D.R.I. June 20, 2019) (weighing MSE clinical findings is "the province of the

ALJ, and d[oes] not require the ALJ to interpret raw medical data or conduct a layperson's interpretation of medical jargon"), adopted sub nom. Michael D. v. Saul, 2019 WL 3842865 (D.R.I. Aug. 15, 2019). Accordingly, the Court finds no error in either the ALJ's determination that the non-examining experts' findings constitute substantial evidence, and are partially persuasive, or in his reliance on them, along with other evidence, to formulate Plaintiff's RFC.

Plaintiff's challenge to the ALJ's analysis of the treating source opinions is equally unavailing. For starters, Plaintiff's contention that the ALJ's analysis is superficial and perfunctory is simply wrong. Having reviewed the ALJ's decision and these opinions in the context of the entirety of the record in this case, the Court finds that the ALJ's approach is appropriately nuanced and thoughtful. Further, the Court finds no error in the ALJ's reliance on the clash between the Klein/Pinkston-Camp opinions and the "largely normal [MSE] findings," Tr. 34, in their treating notes. See Michael D., 2019 WL 2537587, at *7. Nor did the ALJ err in referencing Dr. Klein's many notations reflecting that Plaintiff's serious mental health symptoms improved with medication, nor was it error for the ALJ to discount the Pinkston-Camp opinion on this point because she deferred to Dr. Klein with respect to medication. See Michelle C. v. O'Malley, C.A. No. 23-230MSM, 2024 WL 2237917, at *6 (D.R.I. May 17, 2024), adopted, 2024 WL 2834062 (D.R.I. June 4, 2024).

Regarding DA+A, the Court finds no error in the ALJ's determination that the Pinkston-Camp opinion's persuasiveness is adversely impacted by Dr. Pinkston-Camp's failure to opine on DA+A materiality despite a diagnosis of active methamphetamine abuse. Nor did the ALJ err in considering the facts contradicting the accuracy of Dr. Klein's treating notation that Plaintiff stopped all substance use in September 2022, which note supplies the support for Dr. Klein's opinion that substance abuse was "in remission." Further, Plaintiff's DA+A argument – that the

non-examining experts and the ALJ did not perform a DA+A secondary analysis so the ALJ erred in criticizing the treating sources for the same approach – misses the point. Because the non-examining experts and the ALJ found that Plaintiff was not disabled despite continuing intermittent abuse of drugs and alcohol, there was no need for a DA+A materiality analysis. By contrast, both Drs. Klein and Pinkston-Camp opined to disabling symptoms, compelling them either to find no substance abuse (as Dr. Klein did in making the factually contradicted finding that substance abuse was "in remission," Tr. 1510) or to continue the analysis to determine whether substance abuse was material (which Dr. Pinkston-Camp failed to do). The Court finds no error in the ALJ's labeling as unpersuasive these treating source opinions due to their failure to address this legally critical issue appropriately.

Plaintiff's remaining arguments may be given short shrift. First, Plaintiff's marshaling of Rose v. Shalala, 34 F.3d 13 (1st Cir. 1994), for the proposition that an ALJ cannot rely on non-examining sources to deny benefits in a case with subjective complaints misses the mark because he misstates the meaning of Rose, which is focused on chronic fatigue syndrome, an impairment whose severity does not depend on objective proof. Rose, 34 F.3d at 18-19 (ALJ erred in relying on non-examining experts whose opinions rested on "blind reliance on a lack of objective findings."). In any event, Rose is inapplicable to this case, which is loaded with substantial objective clinical evidence in the form of the MSE findings and the clinical observations of the many providers who had encounters with Plaintiff. Similarly, Plaintiff's contention (in reliance on Fourth Circuit cases from the 1980s) that a non-examining opinion may not be considered as substantial evidence if it is contradicted by any other evidence of record is simply wrong. See ECF No. 12-1 at 16. Weighing conflicting evidence is exactly what the ALJ is required to do. See 20 C.F.R. § 416.913a(b)(1); Richardson v. Perales, 402 U.S. 389, 399 (1971) (in the "not

uncommon situation of conflicting medical evidence[, t]he trier of fact has the duty to resolve that conflict"). Nor is Plaintiff correct in critiquing the ALJ for failing to comply with the requirement of SSR 96-8p, <u>Assessing Residual Functional Capacity in Initial Claims</u>, 1996 WL 374184 at *5 (July 2, 1996), that the RFC must be based on "*all of the relevant* evidence." ECF No. 12-1 at 13-14 (emphasis in original). As his decision makes clear, Tr. 27, the ALJ plainly considered all of the evidence contained in this record, and Plaintiff does not point to any evidence that was omitted from consideration.

Based on the foregoing, and on its own review of the entire record, the Court finds that the ALJ properly weighed conflicting evidence to make a decision that appropriately rests on substantial evidence and is in conformity with applicable law. Therefore, the Commissioner's determination in reliance on the ALJ's decision will not be disturbed.

## V.     Conclusion

Based on the foregoing analysis, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 12) is DENIED and Defendant's Motion for an Order Affirming the Decision of the Commissioner (ECF No. 14) be GRANTED. The Clerk is directed to enter judgment in favor of the Commissioner.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
January 16, 2025